**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CHARLES E. WILLIAMS, SR.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:08-CV-1840-G** |
| | § | |
| **NORTH TEXAS TOLLWAY AUTHORITY,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order No. 3-251, this case was referred for pretrial management, including the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendation on dispositive motions. Before the Court is *Defendant North Texas Tollway Authority's Motion for Summary Judgment*, (doc. # 53), filed January 29, 2010. Based on the relevant filings, evidence, and applicable law, Defendant's motion should be **GRANTED.**

**I.  BACKGROUND**[1]

On October 15, 2008, Plaintiff Charles E. Williams, Sr., filed this action against his former employer, the North Texas Tollway Authority ("NTTA"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*  (App. pp. 1-2).  He alleges "racial discrimination, retaliations, hostile working environment, unfavorable evaluation, disparity impact and treatment.

---

[1] The background is taken from the appendix in support of Defendant's motion for summary judgment ("App."). Although Defendant submitted two appendices in support of its reply, it did not seek leave to file new evidence. Because allowing the evidence would deprive Plaintiff of a meaningful opportunity to respond, the reply appendices have not been considered.  *See Spring Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (Fitzwater, J.) ("where a movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response, the court still retains the discretion to decline to consider them").

Also unfavorable salary to other individuals in similar positions at NTTA." (doc. 1; App. pp. 104-08).

The NTTA employed Plaintiff as its Assistant Director of Finance in February 2007. (App. pp. 7, 9). In that position, he was responsible for supervising all areas of accounting, procurement, revenue audits, budgeting, investment, banking, and for managing outside auditors. (App. p. 10). He was also responsible for conducting internal audits, assisting with outside audits, developing and maintaining cost accounting, directing the development of comprehensive annual financial reports, overseeing budget preparation, and approving final documents that were sent to the head of the department or to other executives. (App. pp. 10-12). The hierarchy in the Finance Department consisted of the Chief Financial Officer, the Controller, the Director of Finance, and the Assistant Director of Finance. (App. p. 52). As Assistant Director of Finance, Plaintiff was expected to receive limited direction from his superiors. (App. pp. 11-12, 87).

Plaintiff directly reported to Armando Garza, the Director of Finance at the NTTA. (App. p. 208a). Shortly after Plaintiff was hired, Garza noticed that the numbers provided in the 2007 monthly financial statements did not match the numbers in the corresponding schedules. (App. p. 208a). The statements fell over two months behind schedule, and the NTTA Board of Directors returned each statement to the Finance Department for corrections. (App. pp. 21-22). On at least two occasions, the executive management of the NTTA received the 2007 budget with errors in its numbers. (App. pp. 20, 28). Some of the internal control and audit procedures for which Plaintiff was responsible were not properly completed in 2007, and a related comprehensive report was also not completed by the end of the year. (App. pp. 22-24, 31). A statistical section of the 2007 CAFR for which Plaintiff was responsible needed improvement. (App. pp. 18, 27).

Plaintiff applied for the position of Assistant Executive Director of Operations ("AEDO") in October 2007.  (App. p. 228).  The NTTA selected Clayton Howe, a white male with more experience in operations than Plaintiff, an African-American, for the position.  *Id.*  In February 2008, Plaintiff applied for the position of Chief Financial Officer ("CFO").  (App. pp. 38-39).  CFO candidates had to be licensed Certified Public Accountants ("CPA"), but Plaintiff was not a licensed CPA.  (App. pp. 38-40).  The NTTA selected Janice Davis, an African-American woman and a licensed CPA, for the position.  (App. p. 1).  The NTTA also hired Jennifer Varley, a white female, to serve as the interim CFO.  (App. p. 100).  On March 13, 2008, Plaintiff received his 2007 performance appraisal from the NTTA.  (App. pp. 25-26, 94-97).  The appraisal assigned him an overall "Meets Standards" rating, and a "Needs Improvement" rating in two subcategories in budgetary: providing comprehensive justification for budgetary, and involving staff and others in financial improvement initiatives.  *Id.*

On March 21, 2008, Plaintiff filed an EEOC charge against the NTTA, claiming that it had discriminated against him by not selecting him for the two jobs and by giving him an unfair evaluation.  (App. pp. 100-01).  He alleged that Varley had made a comment that people in the Finance Department looked like they were from the United Nations, Garza had informed him that Varley was "out to get" him, and NTTA's deputy executive director, Rick Herrington, had stated during a meeting that Varley was "like a Nazi running around the NTTA barking orders and commands to everyone."  *Id.*  Kiven Williams, the NTTA's interim director of Human Resources, investigated the allegations and found them to be without merit.  (App. pp. 42, 49-50, 230-31).  He concluded that Varley's conduct towards Plaintiff was related to his ability to do his job and not his race.  (App. pp. 231).

3

On September 1, 2008, Davis replaced Varley as CFO, and Ray Zies became the Controller. (App. pp. 1, 51-52, 244).   On October 9, 2008, Plaintiff complained to the Human Resources Department that Zies was disrespectful towards him during a meeting with other Finance Department employees.  (App. p. 236).  The department found Plaintiff's complaint baseless.  *Id.*

On March 26, 2009, Plaintiff received his 2008 Performance Appraisal.  (App. p. 109).  The appraisal assigned him a "Needs Improvement" rating overall and in eleven subcategories, including project management, leadership skills, and organizational skills.  (App. pp. 53-56, 109-13).  As a result of his overall "Needs Improvement" rating,, in accordance with its policy, the NTTA placed Plaintiff on a sixty-day Performance Improvement Plan ("PIP") to help him improve his performance.  (App. pp. 56-57, 127-28, 238).

In April 2009, the NTTA decided to implement a reduction-in-force in the majority of its departments.  (App. pp. 2, 237, 247).  On April 16, 2009, Davis and Zies, in conjunction with the Human Resources Department, created a reduction-in-force plan for the Finance Department.  *Id.* The plan eliminated the Assistant Director of Finance position.  *Id.*

On April 27, 2009, Plaintiff filed a second EEOC charge alleging that the 2008 appraisal was given in retaliation for his previous EEOC charge and for his refusal to sign his 2007 performance appraisal.  (App. pp. 47-49, 200).

During the PIP period, Plaintiff's supervisors continued to find his performance unsatisfactory.  (App. pp. 129-98).  Zies reprimanded Plaintiff for not filing the appropriate documentation and information on a lease for the NTTA's financial statements.  (App. pp. 58-60, 129-37).  He wrote the following in an email to Plaintiff: "As the Assistant Director of Finance, my expectations are that you would verify that the information is presented correctly the first time you

forward to me.  This is now the third time this has been submitted and it is still incorrect.  This level

of effort is not acceptable."  *Id.*  Zies also reprimanded Plaintiff for failing to properly prepare and

review journal vouchers.  (App. pp. 66-69, 152-72).  Garza informed Plaintiff  in two meetings that

he was not meeting deadlines on various projects and that he needed to work on his leadership skills,

including taking ownership and responsibility for his work.  (App. pp. 201-04).

On May 24, 2009, the day Plaintiff's PIP ended, Davis sent him an email stating that he had

not completed the appropriate GASB 45 disclosure for post-employment benefits in connection with

drafting notes to the financial statements.  (App. pp. 73-74, 127, 186-98).  She stated that this was

"an inexcusable omission for any accountant, much less the Assistant Director of Finance."  (App.

pp. 73-74, 187).  In a memorandum to the Human Resources Department on May 26, 2009, Zies

outlined specific examples of Plaintiff's performance problems, including his inability to complete

tasks with minimal direction and intervention from his supervisors and to complete any tasks that

an Assistant Director would be expected to complete.  (App.  pp. 248-49).

On June 1, 2009, the NTTA initiated the reduction-in-force in the Finance Department,

informing Plaintiff and other affected employees that their positions were being eliminated or

revised but that they could apply for other open positions.  (App. p. 237).  On June 8, 2009, the

NTTA terminated Plaintiff's employment, citing his failure to improve his performance during the

PIP period.  (App. pp. 205-07).  No one replaced Plaintiff as the Assistant Director of Finance

because that position was eliminated.  (App. p. 237).

On January 29, 2010, Defendant moved for summary judgment with respect to all of

Plaintiff's claims.  (Mot. at 4).  Plaintiff filed a response on February 19, 2010. On March 3, 2010,

Defendant filed a reply, and the motion is now ripe for consideration.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once this showing is made, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.  To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the movant is proper if, after

adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## III.  MOTION TO STRIKE EVIDENCE

Defendant moves to strike Plaintiff's summary judgment evidence on grounds that it does not include affidavit or sworn testimony and contains inadmissible hearsay, conclusory allegations, and allegations based on conjecture and subjective belief. (Reply at 2, n. 1).

Plaintiff's evidence consists of his 2007 annual evaluation and appraisal, log entries and emails describing how he felt about his supervisors' conduct, emails between him and his co-workers related to work and stating his view of the events at work, an NTTA memorandum in which he points out a variance between his salary and salaries of other assistant directors at NTTA, an agenda describing financial and budgeting capital goals, and statements announcing the departures

of NTTA's executive director, the deputy executive director, and the CFO.

Defendant objected generally but did not lodge specific objections to specific pieces of evidence or portions thereof. Federal Rule of Evidence 103(a)(1) requires the objecting party to make specific objections and state the specific grounds on which each piece of evidence should be stricken. *See Tucker v. SAS Institute Inc.*, 462 F. Supp.2d 715, 722 (N.D. Tex. 2006) (citing *United States v. Avant*, 367 F.3d 433, 445 (5th Cir. 2004). Because "a loosely formulated and imprecise objection will not preserve error," a trial court "must be fully apprised of the grounds of an objection." *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998). Defendant's motion is subject to denial for lack of specificity.

In addition, none of Plaintiff's evidence affects the disposition of Defendant's motion. The performance appraisals were repetitive of evidence proffered by Defendant. The log entries represented Plaintiff's subjective belief that the deadlines and assignments at work were motivated by discrimination and retaliation.[2] The emails do not evidence discrimination, retaliation or a hostile work environment, and the remaining evidence is not relevant to any of Plaintiff's claims. Additionally, Plaintiff did not specify the precise manner in which the evidence supports his claims. *See Ragas*, 136 F.3d at 458. Since the Court did not rely on the exhibits in reaching its conclusions, the objections are moot, and Defendant's motion to strike evidence should be **DENIED**. *See e.g. Enochs v. Lampasas County*, 2009 WL 4598267, at *7 (W.D. Tex. Dec. 2, 2009) (denying as moot motion to strike evidence, when the court did not rely on the evidence).

## IV.  RACE DISCRIMINATION CLAIM UNDER TITLE VII

Defendant moves for summary judgment on Plaintiff's racial discrimination claim under

---

[2] Subjective belief, as discussed *infra*, is not evidence of discrimination, retaliation or hostile work environment claims.

Title VII.  (Mot. Br. at 1-2).  At issue are Plaintiff's 2007 and 2008 performance appraisals, NTTA's

failure to select him for the AEDO and CFO positions, and his termination.  (Mot. Br. at 14).

## A.    **Title VII Framework**

Claims for racial discrimination in the employment context are analyzed under Title VII's

well established burden-shifting paradigm.  "First, the plaintiff must establish by a preponderance

of the evidence a *prima facie* case of discrimination."  *Nichols v. Lewis Grocer*, 138 F.3d 563, 566

(5th Cir. 1998).  A plaintiff may establish a *prima facie* case of discrimination through either direct

evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792 (1973).  *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.

1998).  Under the framework set forth in *McDonnell Douglas*, a plaintiff must show that he (1)

belongs to a protected group; (2) was qualified for his position; (3) suffered an adverse employment

action; and (4) was replaced by or was treated less favorably than a similarly qualified individual

outside the protected class.  *See McDonnell Douglas*, 411 U.S. at 802.

If the plaintiff establishes a *prima facie* case, an "inference of intentional discrimination"

arises.  *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).  The burden of

production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the

challenged employment action.  *Okoye v. Univ. of Texas Houston Health Science Ctr.*, 245 F.3d 507,

512 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)).

Once the defendant has met its burden of production and responded with a legitimate, non-

discriminatory reason for the employment action,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material
> fact either (1) that the defendant's reason is not true, but is instead a pretext for
> discrimination (pretext alternative); or (2) that the defendant's reason, while true, is
> only one of the reasons for its conduct, and another motivating factor is the plaintiff's

protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).   Under the pretext alternative, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason."  *Nichols*, 138 F.3d at 566. Under the mixed-motive alternative, a plaintiff need only present sufficient evidence for a reasonable jury to conclude that the protected characteristic was a motivating factor for the employment practice.  *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003).

**B.      NTTA's Termination of Plaintiff**

Defendant argues that Plaintiff's discrimination claim based on his termination from NTTA fails because Plaintiff can neither establish a *prima facie* case of discrimination, nor provide evidence that Defendant's articulation of a legitimate non-discriminatory reason was a pretext for discrimination or that race was a motivating factor in its termination decision.  (Mot. Br. at 15-23).

**1.      Prima Facie Case**

Defendant asserts that Plaintiff cannot show that he was replaced with someone outside his protected class because the Assistant Director of Finance position was eliminated pursuant to a reduction in force and a reorganization of the Finance Department.  (Mot. Br. at 15-16, citing App. p. 237).  Defendant has provided evidence to show that Plaintiff cannot meet at least one of the elements of his *prima facie* case and therefore has met its summary judgment burden.

Plaintiff must now direct the Court's attention to evidence in the record sufficient for a reasonable jury to conclude that he was replaced by someone outside his protected class.  Because Plaintiff has failed to provide evidence raising a genuine issue of material fact concerning an

element of his *prima facie* case, summary judgment should be granted on this basis.

### 2.      Legitimate Non-Discriminatory Reason

In addition, Defendant has asserted a legitimate, non-discriminatory reason for its termination decision by filing affidavit and other evidence demonstrating a history of Plaintiff's poor performance and of his need for improvement during the PIP period.  (Mot. Br. at 16-18, citing App. pp. 2, 14-15, 17-18, 20-31, 53-56, 63-69, 71-73, 76-77, 91-97, 109-13, 129-99, 208a-210, 245-46). Defendant also argues that the reduction in force and restructuring of the Finance Department were legitimate, non-discriminatory reasons for eliminating Plaintiff's position.  (Mot. Br. at19, citing App. p. 237).  As outlined in the background section, the evidence cited by Defendant shows that Plaintiff was terminated due to his poor performance, the reduction in force, and the reorganization, and therefore pursuant to a legitimate non-discriminatory reason.  Defendant has provided evidence of a valid reason to terminate Plaintiff's employment, and therefore has met its burden of production to provide a legitimate, non-discriminatory reason for terminating him.  The burden now shifts to Plaintiff to raise a genuine issue of material fact either by showing that Defendant's proffered reasons are a pretext for discrimination or that race was a motivating factor in Defendant's decision to terminate Plaintiff.

### 3.      Pretext/Mixed-Motives

Plaintiff argues that the workplace comments made by his supervisors are evidence of discriminatory motive.

In order for workplace comments to provide sufficient evidence of discrimination, they must be (1) related to Plaintiff's protected class, (2) proximate in time to the alleged adverse action, (3) made by an individual with authority over the employment decision at issue, and (4) related to the

employment decision at issue.  *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 343-44

(quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222-23 (5th Cir. 2001); *Stone v. Parish of*

*E. Baton Rouge*, 329 F. App'x 542, 545 (5th Cir. 2009).

Here, Varley's alleged statement that the Finance Department resembled the United Nations,

and Herrington's alleged statement that Varley was acting like a Nazi, did not relate to African-

Americans, were not directed at Plaintiff, did not address Plaintiff's termination, and were made a

year before Plaintiff's termination.  (*See* Mot. Br. at 20-21).  Similarly, Garza's alleged comment

that Varley was "out to get" Plaintiff did not address Plaintiff's race and was made a year before his

termination.  (*See* Mot. Br. at 21-22).  These comments do not constitute sufficient evidence of

discrimination.

Plaintiff also claims that Garza directed him not to work on accounting matters, budgets, or

financial statements.  Garza's alleged instructions standing alone are insufficient to support

Plaintiff's discrimination claim.  His termination occurred long after the alleged instructions and

after the NTTA provided him an opportunity to show improved performance by successfully

completing the PIP.  Plaintiff states that he will produce witnesses at trial to prove that he performed

at a high level and that he is being held responsible for the shortcomings of Garza and other

employees at NTTA.  (Resp. at 5).  The inquiry in a discrimination claim is limited to the employer's

real reasons for terminating Plaintiff; courts do not second guess an employer's decision, without

evidence of discriminatory animus.  *See Amezquita v. Beneficial Tex. Inc.*, 264 F.App'x 379, 386

(5th Cir. 2008); *Hervey v. Miss. Dep't of Educ.*, 2010 WL 88901, at *4-6 (S.D. Miss. Jan. 6, 2010).

Here, Plaintiff has not provided any evidence of discriminatory animus.

Plaintiff has failed to produce evidence sufficient for a reasonable jury to conclude that

12

Defendant's decision was motivated by his race.  His subjective belief alone is not enough to survive a summary judgment motion in the face of proof showing an adequate non-discriminatory reason. *Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996); *Salinas v. AT&T Corp.*, 314 F.App'x 696, 699 (5th Cir. 2009). Therefore, Defendant is also entitled to summary judgment on Plaintiff's discriminatory termination claim on this basis.  *See Celotex Corp.*, 477 U.S. at 322-23.

## C.     NTTA's Failure to Select Plaintiff for the AEDO Position

Defendant also moves for summary judgment on Plaintiff's racial discrimination claim based on its failure to select him for the AEDO position.  (Mot. Br. at 24-25).  Defendant argues that it is entitled to summary judgment at every step of the burden-shifting paradigm.  *Id.*

### 1.     Prima Facie Case

Defendant argues that Plaintiff cannot establish a *prima facie* case of discrimination because he was not qualified for the AEDO position based on his lack of requisite experience in the area of operations, only seven months of employment with the NTTA, and an unsatisfactory 2007 performance appraisal.  (Mot. Br. at 24-25, citing App. pp. 94-97, 228).  Defendant has produced evidence showing that Plaintiff cannot meet at least one of the elements of his *prima facie* case for discrimination, and therefore has met its burden.

The burden now shifts to Plaintiff to direct the Court's attention to evidence sufficient for a reasonable jury to conclude that he was qualified for the AEDO position.  Apart from his conclusory assertion that he was qualified for the position, he brings forward no evidence that he was actually qualified.  Conclusory assertions are not competent summary judgment evidence.  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007).  Defendant is entitled to summary judgment on this claim.

### 2.      Legitimate Non-Discriminatory Reason

Defendant also articulates a legitimate non-discriminatory reason for not selecting Plaintiff as the AEDO; it provides evidence that the individual selected for the position had extensive experience in the area of operations.  (Mot. Br. at 25, citing App. p. 228).  Defendant also points to Plaintiff's admission in his deposition that he was unaware of Howe's operations experience, and that Howe would be more qualified for the job if he had extensive operations experience.  (App. pp. 32-33, 35).  Defendant has produced evidence of a valid reason for not selecting Plaintiff for the AEDO position, and therefore has met its burden of production to provide a legitimate non-discriminatory reason for the alleged discriminatory action.  Plaintiff must now meet his burden to create a genuine issue of material fact that Defendant's proffered reasons are a pretext for discrimination or that race was a motivating factor in its decision not to select him as AEDO.

### 3.      Pretext/Mixed-Motives

Plaintiff has not proffered any evidence that race was a motivating factor in NTTA's failure to select him as AEDO.   Instead, he makes unsubstantiated allegations in his response that NTTA's Executive Director commented that members of the selection committee selected Howe as AEDO because they felt comfortable and at ease with him.  (Resp. at 6).  Even if this comment was true, it does not constitute evidence of discriminatory motive without a showing that it is related to Plaintiff's race.  Additionally, Plaintiff's discrimination claim is based on his subjective belief that he qualified for the job because he had an MBA, and that he was not selected because of his race. (App. pp. 36-37).  As stated earlier,  Plaintiff's subjective belief alone is not enough to show pretext or mixed motives in the face of evidence showing an adequate non-discriminatory reason. *Douglass*, 79 F.3d at 1430; *Salinas*, 314 F.App'x at 699.  Summary judgment should be granted on Plaintiff's

claim based on the failure to select him as AEDO on this basis as well.  *See Celotex Corp.*, 477 U.S. at 322-23; *Ragas*, 136 F.3d at 458.

**D.     NTTA's Failure to Select Plaintiff for the CFO Position**

Defendant also moves for summary judgment on Plaintiff's racial discrimination claim based on its failure to select him as CFO.  (Mot. Br. at 26-28).  Defendant claims that it is entitled to summary judgment at all three stages of the burden-shifting framework.  *Id.*

**1.     Prima Facie Case**

Defendant argues that Plaintiff cannot establish the second and fourth prong of his *prima facie* case of discrimination because he was not qualified for the CFO position and was not replaced by someone outside his protected class.  Defendant provides evidence that Plaintiff lacked the requisite CPA license to qualify for the CFO position.  (Mot. Br. at 26, citing App. p. 40).  Defendant also provides evidence that it did not select anyone outside of Plaintiff's protected class but hired Davis, an African-American with a CPA license, to fill the CFO position.  (Mot. Br. at 26-27, citing App. p. 1).  Defendant has provided evidence showing that Plaintiff cannot establish at least two elements of his *prima facie* case.

The burden now shifts to Plaintiff to point out evidence sufficient for a reasonable jury to conclude that he was qualified for the position and that Defendant hired someone outside his protected class.  Plaintiff does not provide such evidence and does not meet his burden, so summary judgment is proper on this claim.

**2.     Legitimated Non-Discriminatory Reason**

Defendant also asserts a legitimate non-discriminatory reason for not selecting Plaintiff for the CFO position.  Defendant presents competent summary judgment evidence showing that Plaintiff

lacked the requisite CPA license and had a history of poor performance at the NTTA.  Defendant

has met his burden of production at step two of the burden-shifting paradigm.  (Mot. Br. at 27). The

burden now shifts to Plaintiff to create a genuine issue of material fact that Defendant's proffered

reasons are a pretext for discrimination or that race was a motivating factor in its decision not to

select him as CFO.

### 3.      Pretext/Mixed-Motives

Plaintiff states his subjective belief that Defendant's new requirement of a CPA license was

essentially a glass ceiling meant to block his selection. (Resp. at 5).  However, apart from conjecture

and speculation, Plaintiff has brought forth no competent summary judgment evidence showing that

Defendant had a discriminatory motive in not selecting him CFO.  Defendant is therefore entitled

to summary judgment on Plaintiff's discriminatory claim based on its failure to select him CFO.  *See*

*Bowers v. Principi*, 172 F.App'x. 623, 626 (5th Cir. 2006) (affirming summary judgment on a race

discrimination claim where employer replaced employee with members of the same protected class,

employer produced evidence that employee was not the best qualified for the position, and employee

failed to demonstrate that he was denied employment based on his membership in a protected class).

### E.      NTTA's Appraisals of Plaintiff's Performance

Defendant contends that Plaintiff's discrimination claim based on the 2007 and 2008

performance appraisals and his subsequent placement on a PIP fails as a matter of law.  (Mot. Br.

at 14, n. 6).  Defendant argues that these actions do not constitute ultimate employment decisions

necessary to meet the adverse action element of a *prima facie* case of discrimination.  *Id.*

The Fifth Circuit has held that an adverse action necessary to state a *prima facie* case of

racial discrimination under Title VII includes "only ultimate employment decisions such as hiring,

granting leave, discharging, promoting, or compensating."[3] *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). An adverse employment action under Title VII does not include decisions made by an employer that merely limit an employee's opportunities for promotion but do not affect his job duties, compensation, or benefits. *Banks v. E. Baton Rouge Parish Sc. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Davis v. Miss. Transp. Comm'n*, 618 F.Supp.2d 559, 564 (S.D. Miss. 2009). A negative performance evaluation, alone or even accompanied by an employee's placement on a performance improvement plan, does not rise to the level of an ultimate employment decision. *See Mattern v. Estman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997) (abrogated on other grounds by *Burlington N. &Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)); *Felton v. Polles*, 315 F.3d 470, 488 (5th Cir. 2002) (same); *Dixon v. Moore Wallace Inc.*, 2006 WL 1949501, at *9 (N.D. Tex. June 16, 2004) (Fitzwater, J.) (poor performance evaluation as a matter of law does not qualify as an adverse employment action).

Because the negative performance evaluations and the accompanying PIP do not constitute adverse actions as a matter of law, Plaintiff cannot establish this element of his *prima facie* case of discrimination. Defendant is therefore entitled to summary judgment on Plaintiff's discrimination claim based on the performance appraisals and the PIP.

## V. RETALIATION CLAIM UNDER TITLE VII

Defendant also moves for summary judgment on Plaintiff's claims that Defendant retaliated against him by giving him a negative 2008 performance appraisal, placing him on a PIP, and

---

[3] Although the Fifth Circuit has questioned whether this formulation comports with the Supreme Court's standard for Title VII cases in *Burlington N. &Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), it has held that the Supreme Court expressly abrogated the "ultimate employment test" in only Title VII retaliation cases, and that the test still applies to cases alleging discrimination. *See McCoy*, 492 F.3d at 559-60; *Bouvier v. Northrup Grumman ship*, 350 F.App'x 917, 922 n. 1 (5th Cir. 2009); *McKay v. Johanns*, 265 F.App'x 267, 268 (5th Cir. 2008).

terminating him.  (Mot. at 2-3).

## A.  Title VII Framework for Retaliation Claims

Retaliation claims under Title VII are analyzed under the burden shifting framework applicable to Title VII discrimination claims.  A plaintiff must first establish a *prima facie* case of retaliation by showing that (1) he participated in activity protected by Title VII, (2) he suffered an adverse employment action, and (3) a causal connection existed between his protected activity and the adverse employment action.  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).  If the plaintiff establishes a *prima facie* case of retaliation, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions.  *McCoy*, 492 F.3d at 556. If the employer meet its burden of production, Plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the employer's reason is not true, but is instead a pretext for retaliation, or (2) that the employer's reason, while true, is only one of the reasons for its conduct and another motivating factor is the plaintiff's protected activity.  *See Rachid*, 376 F.3d at 312; *Smith v. Xerox Corp.*, ---F.3d----, 2010 WL 1052837, at *5-6 (5th Cir. 2010); *Cothran v. Potter*, 2010 WL 1062564, at *5 (N.D. Tex. Mar. 22, 2010).

## B.    2008 Performance Appraisal and Accompanying PIP

Defendant moves for summary judgment of Plaintiff's retaliation claim based on the 2008 appraisal and the accompanying PIP at each step of the burden shifting framework.  (Mot. Br. at 32-34).

### 1.    Prima Facie Case

Defendant asserts that Plaintiff cannot establish a *prima facie* case of retaliation because he cannot establish a causal connection between his 2008 EEOC charge and his 2008 performance

appraisal and PIP.  (Mot. Br. at 32-33).  A plaintiff can establish a causal link by showing that the "employer's decision to terminate was based in part on knowledge of the employee's protected activity."  *Manthos v. Jefferson Parish*; 353 F.App'x 914, 919 (5th Cir. 2009); *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001); *Sherrod v. Am. Airlines Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).  "The proffered evidence must be sufficient to permit a reasonable fact finder to conclude that the decision-maker had actual knowledge of the protected activity."  *Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 454-55 (5th Cir. 2007).

Here, Defendant presents evidence that Garza, the individual who prepared the 2008 performance appraisal, had no knowledge of Plaintiff's 2008 EEOC charge when he prepared the appraisal.  (Mot. Br. at 32, citing App. p. 210).  Additionally, Defendant asserts that the 2008 EEOC charge was filed more than a year before the 2008 performance appraisal.  Defendant has proffered evidence showing that there is no causal connection between the EEOC charge and the performance appraisal and accompanying PIP, one of the elements of Plaintiff's *prima facie* case of retaliation. Defendant has therefore met its burden.  *See Amie*, 253 F.App'x at 455 (affirming district court's dismissal of retaliation claim on grounds that the plaintiff produced no evidence showing the decision-makers' knowledge of his EEOC complaints).

Plaintiff does not present competent summary judgment evidence of Garza's knowledge of the EEOC charge or any other causal link.  Therefore, Plaintiff has failed to create a genuine issue of material fact that a causal link existed between his EEOC charge and the 2008 performance appraisal and PIP, and summary judgment should be granted on this basis.

### 2.      Legitimate Non-Retaliatory Reason

Defendant also asserts that Plaintiff's poor performance, as evidenced in the record, is a

legitimate, non-retaliatory reason, and the real reason why the NTTA gave Plaintiff a negative performance review and placed him on a PIP. (Mot. Br. at 33). Defendant has met its burden of production to provide a legitimate non-retaliatory reason for the 2008 appraisal and the subsequent PIP. Plaintiff must now offer sufficient evidence to create a genuine issue of material fact that Defendant's proffered reasons are a pretext for retaliation or that Plaintiff's EEOC charge was a motivating factor in assigning him the "Needs Improvement" rating in his 2008 performance appraisal or his placement on the PIP.

### 3.      Pretext/Mixed-Motives

Plaintiff does not direct the Court's attention to evidence in the record creating a genuine issue of material fact that Plaintiff's EEOC charge was a motivating factor in his 2008 performance appraisal and PIP, or that Defendants proffered reason was a pretext for retaliation. Plaintiff's subjective belief of retaliation is not sufficient to withstand a motion for summary judgment in the face of evidence showing a legitimate non-retaliatory motive for the alleged action. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim that the negative performance review and the accompanying PIP were in retaliation of his EEOC charge.

### C.      NTTA's Termination of Plaintiff

Defendant also moves for summary judgment on Plaintiff's claim that he was terminated in retaliation for his 2009 EEOC complaint. (Mot. Br. at 35-36). Defendant does not dispute that Plaintiff has established a *prima facie* case of retaliation, but argues that it is entitled to summary judgment at the remaining two steps of the burden shifting paradigm. *Id.*

### 1.      Legitimate Non-Retaliatory Reason

Defendant provides evidence that Plaintiff was terminated pursuant to legitimate, non-

discriminatory reasons: his poor work performance, the reorganization of the Finance Department, and the department-wide reduction-in-force.  (Mot. Br. at 35). Since Defendant has met its burden of production at step two of the burden-shifting framework, Plaintiff must present evidence of pretext or mixed motives in order to prevail on his retaliation claim.

### 2.    Pretext/Mixed-Motives

Plaintiff  contends that he will produce evidence of retaliation at trial but does not identify any summary judgment evidence showing retaliatory motives.  (*See* Resp. at 4-5).  Additionally, neither Plaintiff's subjective belief  nor the short time span between his termination and the 2009 EEOC charge are sufficient to meet his ultimate burden to show pretext or retaliatory motive.  (Mot. Br. at 35-36).  Close timing between an employee's protected activity standing alone is not enough to meet Plaintiff's ultimate burden of showing pretext or retaliatory motive.  *See Swanson v. Gen. Servs. Admin*, 110 F.3d 1180, 1188 (5th Cir. 1997); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).  Once the employer offers a legitimate, non-discriminatory reason, Plaintiff must offer some evidence from which the jury may infer that retaliation was a motive.  *Swanson*, 179 F.3d at 301.  Plaintiff has failed to meet his burden, and Defendant is entitled to summary judgment on Plaintiff's retaliation claim based on his termination.

## VI.  HOSTILE WORK ENVIRONMENT CLAIM UNDER TITLE VII

Defendant also moves for summary judgment on Plaintiff's hostile work environment claim under Title VII, which is based on Varley's comment regarding the United Nations and her criticism of his work.  (Mot. at 2; App. pp. 102-03).  Defendant contends that Varley's conduct was not based on race and was not sufficiently severe or pervasive to support a hostile work environment claim.  (Mot. Br. at 28-31).

In order to establish a hostile work environment claim under Title VII, a plaintiff must prove that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Where, as here, the alleged harasser is a supervisor, a plaintiff is not required to prove the fifth element. *See Celestine*, 266 F.3d at 353.

For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Although verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support a Title VII violation, simple teasing, offhand comments, and isolated incidents, unless extremely serious, are not sufficient for a hostile work environment claim to survive a summary judgment motion. *See DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995), *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 328 (5th Cir. 2004).

In determining whether a workplace constitutes a hostile work environment, a court must consider the following circumstances: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v*, 286 F.3d at 268 (citing *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)). The high standard for the above inquiries serves to ensure that Title VII does not become a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Defendant directs the Court's attention to an absence of evidence showing that Varley's conduct towards Plaintiff was based on his race; she did not allude to his race in any of the alleged statements. (Mot. Br. at 29, 102-03). Additionally, Defendant offers evidence showing that Varley's conduct towards Plaintiff was motivated by his poor performance.  (Mot. Br. at 28-29, citing App. pp. 230-35).  Defendant's proffered evidence shows that Varley's conduct toward Plaintiff was not so severe that "it destroyed his opportunity to succeed in the workplace" or "so heavily populated with discrimination" that it completely destroyed his emotional and psychological stability.  *See Hockman*, 407 F.3d at 326; *Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 924 (5th Cir. 1980). Defendant has met its summary judgment burden.

Plaintiff has not provided any evidence to buttress his hostile environment claim, and therefore has failed to meet his burden to identify a fact issue.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.  *Celotex*, 477 U.S. at 324.

## VII.  DISPARATE IMPACT CLAIM

Defendant also moves for summary judgment on Plaintiff's disparate impact claim on grounds that Plaintiff has failed to exhaust his administrative remedies.  (Mot. Br. at 13, n. 5). Defendant argues that even though Plaintiff mentions the phrase "disparity impact" in his complaint, he never filed an EEOC charge against the NTTA alleging disparate impact and never mentioned any NTTA policy having such an impact in his 2008 and 2009 EEOC complaints.  *Id.*

Disparate impact discrimination addresses employment practices or policies that are facially neutral in their treatment of a protected group but have a disproportionately adverse impact on members of that group.  *See Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006);  *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 275-76 (5th Cir. 2008).  Before filing a disparate impact claim

23

under Title VII, a plaintiff  must exhaust his administrative remedies and file a charge with the EEOC.  *Pacheco*, 448 F.3d at 787-88 n. 6.  "The charge enables the EEOC to investigate and, if appropriate, negotiate a resolution with an employer.  Only after administrative efforts terminate may the employee sue the employer in federal court."  *McClain*, 519 F.3d at 273.

Since most EEOC complaints in the Title VII context are initiated *pro se*, a court should liberally construe the scope of an EEOC complaint in determining exhaustion of administrative remedies.  *See Pacheco*, 448 F.3d at 788.  The court should interpret "what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself but by the scope of the investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 789; *See also McClain*, 519 F.3d at 273.  The court should conduct "a 'fact-intensive analysis' of the administrative charge that looks beyond the four corners of the document to its substance."  *McClain*, 519 F.3d at 273; *See also Pacheco*, 448 F.3d at 789.

Here, Plaintiff's 2008 EEOC complaint alleges race discrimination, retaliation, and hostile work environment against the NTTA.  (App. pp. 100-01).  The factual basis for these claims include his 2007 performance appraisal, NTTA's failure to select him for the AEDO and CFO positions, Varley's comment regarding the United Nations, Garza's comment that Varley was "out to get" Plaintiff, and Herrington's comment that Varley was "like a Nazi running around the NTTA barking out orders and commands to everyone."  *Id.*  The EEOC complaint does not allude to any facially neutral NTTA policy.  *See id.*  Plaintiff's 2009 EEOC complaint also alleges race discrimination and retaliation against the NTTA.  (App. p. 200).  The race discrimination claim is based on his 2008 performance appraisal and PIP, and does not allude to any facially neutral NTTA policy.  *Id.*

In this case, a disparate-impact investigation can not reasonably be expected to grow out of

Plaintiff's EEOC complaints because they facially and factually allege disparate treatment only and do not identify any facially neutral employment policy. A facially neutral employment is considered a "cornerstone of any EEO[C] disparate-impact investigation." *See Pacheco*, 448 F.3d at 792 (employee failed to exhaust his disparate-impact claim because his EEO charge alleged that he had not been promoted because of racial discrimination, it failed to identify any neutral employment policy, and it complained of past incidents of disparate treatment only). Defendant has met its initial summary judgment burden to show that Plaintiff has not exhausted his administrative remedies as to his disparate-impact claim.

Plaintiff must now direct the Court's attention to evidence raising a genuine issue of material fact that he exhausted his administrative remedies with respect to his disparate impact claim. Plaintiff does not provide such evidence, and Defendant is entitled to summary judgment on his disparate impact claim.

## VIII.  CONCLUSION

*Defendant North Texas Tollway Authority's Motion for Summary Judgment* should be **GRANTED** in whole.

**SO RECOMMENDED** on this 27th day of April, 2010.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).